| | |
|---|---|
| Chuck Vogel, Juanita Vogel, Casa La Roca LLC, | Civil No.: 18-1706 (RAM) |
| Plaintiffs, | |
| v. | RE: DECLARATORY JUDGMENT, BREACH OF CONTRACT, BAD FAITH, NEGLIGENT SERVICES, ESTOPPEL, AND DAMAGES |
| Universal Insurance Company, Ramón Enrique Ramos-Coll, ABC Insurance Companies; | |
| Defendants | **JURY TRIAL DEMANDED** |

**THIRD AMENDED COMPLAINT AND REQUEST
FOR DECLARATORY JUDGMENT**

**TO THE HONORABLE COURT**:

**APPEAR NOW** the Plaintiffs Chuck Vogel, Juanita Vogel, Casa La Roca LLC, (hereinafter referred to as "Plaintiffs"), through the undersigned counsel, and hereby state, allege, and request as follows:

**JURISDICTIONAL BASIS**

1.  This is an action for declaratory relief pursuant to Title 28 U.S.C. 2201 and 2202, and Rule 57 of the Federal Rules of Civil Procedure, in that a present controversy exists between the parties in which Plaintiff asks this Court to adjudicate and determine the rights of the parties under the Insurance Policy issued by the Defendant Universal Insurance Company, to the Plaintiffs.

2. This case is also based upon diversity jurisdiction under 28 U.S.C. §1332.

3. Plaintiffs Chuck Vogel and Juanita Vogel, are citizens of and are domiciled in the state of Florida.

4. Plaintiff Casa La Roca LLC, is a limited liability company duly organized under and existing by virtue of the laws of the state of Wisconsin.

5. Plaintiff, Chuck Vogel is the sole member and sole manager of Casa La Roca LLC, and as averred in the paragraph number three (3) above, he is a citizen of and domiciled in the state of Florida.

6. All Defendants are individuals, corporations, business entities, or partnerships who are citizens of Puerto Rico or of a state other than Florida and Wisconsin.

7. The matter in controversy exceeds the sum of SEVENTY FIVE THOUSAND DOLLARS ($75,000.00), exclusive of interest and costs, thus vesting jurisdiction on this Honorable Court pursuant to 28 U.S.C. § 1332.

8. Venue is proper in the District of Puerto Rico pursuant to 28 U.S.C. §1391, since the events and acts or omissions giving rise to this claim occurred in this district.

## THE PARTIES

9. Plaintiff  **Chuck Vogel** (hereinafter "Mr. Vogel") is of legal age, a citizen and domiciled in the state of Florida.

10. Plaintiff **Juanita Vogel**  (hereinafter "Mrs. Vogel") is of legal age, a citizen and domiciled in the state of Florida.

11. Mr. Vogel and Mrs. Vogel are the owners of the following properties located in Fajardo, Puerto Rico: a) 180-A Calle B Urbanización La Roca, Fajardo, Puerto Rico; b) 180-B Calle B Urbanización La Roca, Fajardo, Puerto Rico.

12. **Casa La Roca LLC**, is a limited liability company duly organized under and existing by virtue of the laws of the state of Wisconsin. The company's principal office and place of business is in Onalaska, Wisconsin.

13. Chuck Vogel is the sole member and sole manager of Casa La Roca LLC.

14. Casa La Roca LLC is the owner of the following property located in Fajardo, Puerto Rico: a) 181 Calle B Urbanización La Roca, Fajardo, Puerto Rico.

15. Upon information and belief at all times herein mentioned, Defendant **Universal Insurance Company** (hereinafter referred to as "Universal") was an insurance company duly organized and existing by virtue of the laws of the Commonwealth of Puerto Rico with its principal place of business in the Commonwealth of Puerto Rico.

16. **Universal** issued an insurance policy no. UNPK018079 covering the damages suffered on the properties of the Plaintiffs located at: a) 181 Calle B Urbanización La Roca, Fajardo, Puerto Rico, b) 180-A Calle B Urbanización La Roca, Fajardo, Puerto Rico; c) 180-B Calle B Urbanización La Roca, Fajardo, Puerto Rico.

17. The named insureds on Policy number UNPK018079 are Plaintiffs Chuck Vogel, Juanita Vogel and Casa La Roca LLC.

18. Upon information and belief, at all times hereinafter mentioned, **Mr. Ramon**

Enrique Ramos-Coll (hereinafter "Mr. Ramos-Coll") was and still is a licensed insurance broker in the Commonwealth of Puerto Rico, Insurance Agent License No. 1691, with his principal place of business the Commonwealth of Puerto Rico.

19. **Mr.Ramos-Coll** was the insurance broker of the Plaintiffs for over 12 years, responsible for obtaining and renewing on an annual basis the insurance coverage for all of Plaintiffs' properties identified in paragraph no. 10 above. Mr. Ramos-Coll was responsible for renewing policy no. UNPK018079 issued by Universal to cover the period from February 19, 2017 to February 19, 2018.

20. Defendants **ABC INSURANCE COMPANIES** are corporations organized or operating under the laws of the Commonwealth of Puerto Rico or of a state other than Florida and Wisconsin, which are authorized to do business in Puerto Rico, and which upon information and belief insure one or more co-defendants for the acts and/or omissions described herein and/or are liable for the injuries and damages sustained by Plaintiffs.

### GENERAL ALLEGATIONS – AGAINST UNIVERSAL INSURANCE COMPANY

21. Mr. Vogel and Mrs. Vogel are the owners of the following properties located in Fajardo, Puerto Rico: a) 180-A Calle B Urbanización La Roca, Fajardo, Puerto Rico; b) 180-B Calle B Urbanización La Roca, Fajardo, Puerto Rico.

22. Casa La Roca LLC is the owner of the following property located in Fajardo, Puerto Rico: a) 181 Calle B Urbanización La Roca, Fajardo, Puerto Rico.

23. Through their insurance broker for the past 12 years, co-Defendant Mr. Ramos-Coll, the Plaintiffs procured and obtained the renewal of insurance policy no. UNPK018079 issued by co-Defendant Universal.

24. Policy no. UNPK018079 provides insurance coverage for the following properties owned by the Plaintiffs: a) 181 Calle B Urbanización La Roca, Fajardo, Puerto Rico, b) 180-A Calle B Urbanización La Roca, Fajardo, Puerto Rico, and c) 180-B Calle B Urbanización La Roca, Fajardo, Puerto Rico. These properties will be herein after referred to collectively as "the premises".

25. The property coverage part under policy no. UNPK018079 includes: dwelling, appurtenant structures, unscheduled personal properties, additional living expenses, and additional expenses, among others. This policy also includes an umbrella coverage part for all three properties identified in paragraph no. 15 above.

26. The policy issued by Universal covered the premises subject of this complaint with insurance from February 19, 2017 to February 19, 2018.

27. This policy was renewed with Universal on a yearly basis every year from at least 2010 until 2017. In early 2018, Universal renewed the policy yet again, only to later cancel coverage pursuant to a notice of cancellation dated August 3, 2018.

28. The property coverage part of this policy has the following limits:

    a. For the property located at 181 Calle B Urbanización La Roca, Fajardo, Puerto Rico:

        i. For dwelling limits of $3,000,000

      ii.   For appurtenant structures $300,000

     iii.  For unscheduled personal property $300,000

     iv.  For additional living expenses $600,000

      v.  The total policy limits are $4,200,000

     vi.  It also included a two percent (2%) deductible for windstorm damage to the coverage of dwelling, appurtenant structures and unscheduled personal property.

b. For the property located at 180-A Calle B Urbanización La Roca, Fajardo, Puerto Rico:

      i.  For dwelling $500,000

      ii.  For appurtenant structures $50,000

     iii.  For additional living expenses $100,000

     iv.  The total policy limits are $650,000

      v.  It also included a two percent (2%) deductible for windstorm damage to the coverage of dwelling and appurtenant structures.

c. For the property 180-B Calle B Urbanización La Roca, Fajardo, Puerto Rico

      i.  For dwelling $600,000

      ii.  For appurtenant structures $60,000

     iii.  For unscheduled personal property $50,000

     iv.  For additional living expenses $120,000

      v.  The total policy limits are $830,000

     vi.  It also included a two percent (2%) deductible for windstorm damage to the coverage of dwelling and appurtenant structures.

29. The umbrella coverage part of policy no. UNPK018079 has the following limits:

a. For the property located at 181 Calle B Urbanización La Roca, Fajardo, Puerto Rico limits of $500,000.

b. For the property located at 180-A Calle B Urbanización La Roca, Fajardo, Puerto Rico limits of $500,000.

c. For the property 180-B Calle B Urbanización La Roca, Fajardo, Puerto Rico limits of $500,000.

d. Total umbrella policy limits for these properties $1,500,000

30. On September 20, 2017, Puerto Rico was struck by Hurricane María, and caused tremendous destruction and damages to the island. The Plaintiffs' three properties in Fajardo, Puerto Rico, as identified above, were severely damaged because of the hurricane.

31. After the impact of Hurricane Maria, Plaintiffs filed claims with Universal fore each of the three properties to which the following claim numbers were assigned: a) 1952235, b) 1952250 and c) 1952255.

32. Plaintiffs obtained appraisals of the damages suffered by all three of their properties in Fajardo, Puerto Rico.

33. Plaintiffs obtained a total estimate of the damages in the sums of $1,467,703.94. and submitted it to Universal's insurance adjuster assigned to these claims. They provided a detailed statement and all evidence in support of all repairs and replacement costs and expenses needed.

34. At no point during the claim evaluation process did Universal Insurance Company send Plaintiffs a Reservation of Rights letter.

35. As such, Plaintiffs repaired the extensive damage suffered by the houses within six (6) weeks of the hurricane, all while relying on their contract with Universal Insurance Company that their claims would be paid pursuant to the Insurance Policy and to applicable law. This justifiable detrimental reliance on coverage

under the policy, led Plaintiffs to pay upfront and out of pocket for the repairs of the three houses that had become uninhabitable following the passage of Hurricane Maria.

36. Plaintiffs also performed these repairs out-of-pocket while waiting for the outcome of Universal's adjustment process and final payout of their claims, as part of their duty to mitigate damages on all three properties under the policy.

37. After an extensive claim evaluation process, in December of 2017 the adjuster assigned by Universal to investigate the claims led the Plaintiffs to believe that he would adjust and recommend payment to Universal for an amount of $1,200,000.

38. Nonetheless, Universal's insurance adjuster presented a newly adjusted amount of approximately $899,000. Plaintiffs first learned this when they received an "Adjustment Agreement for the Consideration of the Insurer" (Universal) prepared by the adjuster and sent to them for their signature to settle all three claims filed by Plaintiffs for this amount.

39. Plaintiffs did not agree with the adjusted amount and requested Universal's adjuster an opportunity to discuss the difference between their claimed amount, his original offer to adjust the claim to $1,200,000, and the final amount set forth in the Adjustment Agreement form for approximately $899,0000.

40. No response was ever received from the insurance adjuster or from Universal regarding this original offer to settle all claims.

41. Surprisingly, however, Universal sent a letter to the Plaintiffs denying coverage

for the first time without providing the Plaintiffs an opportunity to meet, discuss and clarify the reasons to deny coverage prior to issuing the denial letter.

42. Up until then, Universal had never even put into question whether they would provide coverage under the policy or not. As such, Plaintiffs were led to believe that it was only a matter of time until the claims were adjusted and final payout was issued in their favor.

43. The only reason provided by Universal for denying coverage is that the properties owned by the Plaintiffs in Fajardo, Puerto Rico, were being regularly rented out to third parties and not to family relatives, and that as such, they understood the properties were being used for business purposes as defined within the policy and that therefore, and that as such they are excluded from coverage pursuant to the policy.

44. In their denial letter, Universal does not cite to or refer to any particular exclusion section within the policy.

45. Universal's denial of coverage pursuant to the language of its denial letter, is based solely on two separate definitions included in the Definitions Section of the of Property Coverage Part of the policy, which are inapplicable to the properties at issue in this case, and which in any event are unclear, ambiguous and contradictory among themselves.

46. Universal did not refer to or cite from the policy to any express, clear and unambiguous language excluding coverage for these three properties under any of the four coverages provided under the Property Coverage part of the policy

which include: A) Dwelling, B) Appurtenant / Other Structures, C) Personal Property /Contents, and D) Additional Living Expenses.

47. Therefore, Universal's denial of coverage based on these grounds is an act of bad faith.

48. Universal merely offered to provide limited coverage under a "Special Liability Limits" section of the policy for the "unscheduled personal property" coverage for two of the three properties, at $3,000 each for a total of $6,000 to settle all three claims on all three properties.

49. The figure of $6,000 which is absurd and grossly insufficient to repair the damages suffered by the properties of Plaintiffs in Fajardo, Puerto Rico

50. This offer is in total violation of the duty of defendant Universal and of the provisions of the contract executed with the Plaintiffs.

51. The seasonal or vacation rental of the properties is not expressly prohibited under the policy in any of its Property Coverage part sections.

52. On the contrary, the Property Coverage part section of the Policy provides for and refers to the regular and/or occasional rental of the properties all throughout the language of the policy.

### GENERAL ALLEGATIONS – AGAINST RAMON E. RAMOS-COLL

53. In the event that there was a procurement of inadequate insurance for Plaintiffs, Plaintiffs' insurance broker for the past 12 years, co-defendant Mr. Ramos-Coll, and who was responsible for obtaining and renewing the Unipak Personal Package policy No. UNPK018079 with Universal for at least the past 8 years,

knew or should have known that at the time relevant herein the properties were being rented as seasonal rental properties.

54.   Accordingly, and in the event that this Court determines there was procurement of inadequate insurance for Plaintiffs, Mr. Ramos-Coll should have obtained adequate and proper insurance coverage for Plaintiffs' properties.

55.   In the event that there was a procurement of inadequate insurance for Plaintiffs' properties, Mr. Ramos-Coll breached the contract between him and Plaintiffs.

56.   As a result of the foregoing breach, Plaintiffs' have been denied coverage by Universal, and hence, been unable to recover under policy no. UNPK018079 the damages suffered on all three properties they own in Fajardo, Puerto Rico, as a result of Hurricane María.

### REQUEST FOR DECLARATORY JUDGMENT AGAINST UNIVERSAL INSURANCE COMPANY[1]

57.   Plaintiffs repeat, reiterate and reallege each and every allegation contained in the preceding paragraphs as if more fully set forth herein.

58.   Unipak Policy Number UNPK018079 was issued for coverage year 2017 – 2018. (*See* Exhibit #1 - Unipak Policy Number UNPK018079)

59.   The definitions section of the policy defines "insured" as: "you, your spouse and residents of your household who are: 1) your relatives; or 2) other persons under the age of 21 and in the care of any person named above." (*See* Exhibit #2 – 2016 – 2017 Universal Insurance Policy UNPP 00 02 07 13, Section II – Property

---

[1] Plaintiffs will file a separate Memorandum of Law in support of their request for Declaratory Judgment in this action.

Coverage Part, Subsection I – Definitions, A – Insured.)[2]

60. Plaintiffs qualify under the definition of "insured" as per Universal Insurance Company.

61. Policy Number UNPK018079's Declarations Pages show the Plaintiffs as the named insureds: Chuck and Juanita Vogel, and Casa La Roca LLC.

62. The definitions section of the 2016 – 2017 policy defines "insured location" as: "(1) the 'residence premises', which is shown in the declarations page; or [. . .]" (*See* Exhibit #2 – 2016 – 2017 Universal Insurance Policy UNPP 00 02 07 13, Section II – Property Coverage Part, Subsection I – Definitions, C(1) – Insured Location.)

63. Policy Number UNPK018079's Declarations Pages show the Plaintiffs' three (3) properties (La Roca #1, La Roca #2, and La Roca #3) as the residence premises. (*See* Exhibit #1 - Unipak Policy Number UNPK018079).

64. Plaintiffs' three (3) properties (La Roca #1, La Roca #2, and La Roca #3) constitute the insured location per Universal Insurance Company's own definition.

65. The definitions section of the 2016 – 2017 policy defines "residence premises" as: "1) The one family dwelling, other structures, and grounds; or [. . .] where you

---

[2] A complete certified copy of the insurance policy in effect for the time period at issue in this case (February 2017 to February 2018) has not yet been formally obtained, despite numerous efforts to date by the Plaintiffs and their attorneys. Nonetheless, Plaintiffs expect to obtain shortly as part of the mandatory initial disclosures and/or throughout the discovery process. For this reason, Plaintiffs' are citing and quoting directly from the Definitions and Coverages part of the 2016-2017 policy in effect the year before, which was renewed on identical terms and conditions. Thus, Plaintiffs have no reason to believe that the definitions sections and coverages part for the 2017-2018 policy will be any different in its wording. Furthermore, the portions of the policy cited by Universal in tis denial letter are identical to the definitions included in the 2016-2017 policy for which the undersigned believe that both policies are and should be identical in all terms and conditions, in as much as these were not changed or modified in any way when the policy was renewed in February of 2017.

reside and which is shown as the "residence premises" in the Declarations. 'Residence Premises' also means, other structures, and grounds at that location." (*See* Exhibit #2 – 2016 – 2017 Universal Insurance Policy UNPP 00 02 07 13, Section II – Property Coverage Part, Subsection I – Definitions, F(1) – Residence Premises.)

66. <u>Policy Number</u> UNPK018079's Declarations Pages show the Plaintiffs' three (3) properties (La Roca #1, La Roca #2, and La Roca #3) as the residence premises. (*See* Exhibit #1 - Unipak Policy Number UNPK018079).

67. <u>Plaintiffs' three (3) properties</u> (La Roca #1, La Roca #2, and La Roca #3) constitute the "residence premises" per Universal Insurance Company's own definition.

68. In their denial letter of January 2018, Universal Insurance Company does not argue that any or all of the three properties fail to fall under any of the six categories or sub-items that identify what an "insured location" will be considered under the policy. (*See* Exhibit #3 – Denial Letter from Universal Insurance Company dated January 2nd, 2018).

69. On the contrary, Universal Insurance Company recognizes that the Plaintiffs in this action are in fact the named insureds under the policy Section II(A)(1), and that all three properties would also be considered insured locations under Section II (C)(6) which provides for: "Any part of premises occasionally rented **to** an 'insured' for other than 'business use'." (*See* Exhibit #2 – 2016 – 2017 Universal

Insurance Policy UNPP 00 02 07 13, Section II – Property Coverage Part, Subsection I – Definitions, C(6) – Insured Location.)

70. Section II (C)(6) is not applicable to Plaintiffs' particular situation because the premises in question (La Roca #1, La Roca #2, and La Roca #3) were not premises that the Plaintiffs rented from a third party.

71. Furthermore, Section II(A)(1) of Section II – Property Coverages states what is covered under Coverage A – Dwelling. Specifically, it sets forth that Universal covers: "1) The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and […]." (*See* Exhibit #2 - 2016 – 2017 Universal Insurance Policy UNPP 00 02 07 13, Section II – Property Coverage Part, Subsection II – Property Coverages, A – Coverage A - Dwelling.)

72. The three properties in question all fall under the "residence premises" in the Declarations of the Policy, and thus, also fall under Section II(A)(1)'s coverage blanket. (*See* Exhibit #1 - Unipak Policy Number UNPK018079).

73. Based on the definitions set forth above, all three (3) properties in question are duly covered under the insurance policy.

74. Since Universal did not expressly refer to or cite to any exclusion under any part of the policy, they are precluded from denying coverage.

75. Since all three (3) properties fall under the applicable definitions of "residence premises" and "insured location", Plaintiffs are entitled to all the sub-coverages each property has listed in its respective declarations page. (*See* Exhibit #1 - Unipak Policy Number UNPK018079).

76. For the foregoing reasons, Plaintiffs request this Honorable Court issue

Declaratory Judgment and establish that:

a. Plaintiffs' three (3) properties are duly covered under Universal Insurance Company's Policy Number UNPK018079.

b. Since Universal did not expressly refer to or cite to any exclusion under any part of the policy in their denial letter, they are precluded from denying coverage.

c. Since all three (3) properties fall under the applicable definitions of "residence premises" and "insured location", Plaintiffs are entitled to all the sub-coverages each property has listed in its respective declarations page. (*See* Exhibit #1 - Unipak Policy Number UNPK018079).

## FIRST CAUSE OF ACTION – AGAINST UNIVERSAL FOR BREACH OF CONTRACT

77. Plaintiffs repeat, reiterate and reallege each and every allegation contained in the preceding paragraphs as if more fully set forth herein.

78. Under the general contracts and obligations theory, and in compliance with Article 1207 of the Puerto Rico Civil Code, the contracting parties can establish the pacts, clauses and conditions they deem convenient, as long as they are not contrary to law, moral, or public order.

79. Once the parties agree on those pacts, clauses and conditions through a contract, they are obligated to meet them, since the obligations that are born from contracts are the law between the contracting parties, and must be duly complied with.

80. On or about February 19, 2017 Universal duly issued an insurance policy to the

Plaintiffs bearing number UNPK018079, wherein and whereby it did insure the subject premises described above, for a total amount of $7,180,000 including property coverage and umbrella coverage, for the period of February 19, 2017 to February 19, 2018:

81. In the instant case, the insurance policy between the Plaintiffs and Universal was and continues to be a valid contract.

82. On or about September 20, 2017 the aforesaid policy was in full force and effect.

83. On or about September 20, 2017 the subject premises were severely damaged by the passing of Hurricane María through Puerto Rico; a covered peril under the aforementioned policy.

84. As a result of the foregoing occurrence, Plaintiffs suffered physical damages to their three properties in at least the sum of $1,467,703.94.

85. Furthermore and pursuant to the terms of the policy, Plaintiffs are entitled to additional compensation under the policy, including but not limited to:

   a. The Fair Rental Value of all three properties under Section II (D) Coverage D –Additional Living Expenses – Loss of Use subsection (2) during the time in which they were uninhabitable for an amount no less than $820,000.00:

      i. Casa La Roca #1 (181) - $600,000.00

      ii. Casa La Roca #2 (180-A) - $100,000.00

      iii. Casa La Roca #3 (180-B) - $120,000.00

b. Landlord's furnishings under Section II (E) Additional Coverages subsection (9) for an amount of no less than $7,500.00.

c. Period of restoration during which the properties are unfit for living while additional repairs are performed for an amount of no less than $820,000.00:

    i. Casa La Roca #1 (181) - $600,000.00

    ii. Casa La Roca #2 (180-A) - $100,000.00

    iii. Casa La Roca #3 (180-B) - $120,000.00

86. No part of said sum has been paid by Universal.

87. Universal has breached its own policy when it denied coverage to Plaintiffs for the damages to their properties upon the passage of Hurricane Maria; damages which were covered under the contract entered into by the parties.

88. Universal has breached its own policy when it refused to pay Plaintiffs for the Fair Rental Value of the "residence premises" while the properties were unfit for living as a result of the hurricane; damages which were covered under the contract entered into by the parties.

89. Universal has breached its own policy when it refused to pay Plaintiffs for their damaged household furnishings as result of the hurricane; damages which were covered under the contract entered into by the parties.

90. Universal's refusal to pay the damages caused to the Plaintiffs' property, which were caused by events covered under the insurance policy, constitutes illegal

conduct and non-compliance with the Defendant's obligations under the insurance policy.

91. Universal's refusal to pay the Fair Rental Value of the Plaintiffs' properties, which was due as a result of the events covered under the insurance policy, constitutes illegal conduct and non-compliance with the Defendant's obligations under the insurance policy.

92. Universal's refusal to pay for the damaged household furnishings in Plaintiffs' properties, which were caused by events covered under the insurance policy, constitutes illegal conduct and non-compliance with the Defendant's obligations under the insurance policy.

93. As a result of Universal's breach of contract, Plaintiffs are owed at least the sum of $3,107,703.94.

**SECOND CAUSE OF ACTION – AGAINST UNIVERSAL
FOR BAD FAITH AND DAMAGES**

94. Plaintiffs repeat, reiterate and reallege each and every allegation contained in the preceding paragraphs as if more fully set forth herein.

95. Per the Puerto Rico Civil Code, the parties obligate themselves to that which is expressly agreed upon and also to all consequences that can reasonably be deemed to stem from the nature and loyalty required by those obligations.

96. The Puerto Rico Supreme Court has established and reiterated that any contract and agreement must have good faith and just accord as fundamental principles.

97. The debtor who in bad faith does not comply responds not only for foreseeable damages that are caused by their noncompliance, but also for all those damages

that are derived from their noncompliance. *See* Article 1060 of the Puerto Rico Civil Code.

98. Defendant Universal is liable for all of the damages suffered on the property of the plaintiffs as a result of the passing of Hurricane María on September 20, 2017.

99. As has been seen, the insurance policy was paid for and had coverage of up to $5,680,000 for all three properties and of up to $1,500,000 of umbrella coverage for all three properties, for a total combined coverage of $7,180,000.

100. The Plaintiffs timely notified their claims to Universal, and collaborated actively in providing all necessary documentation, estimates and other evidence in support of their claims.

101. Plaintiffs' claim for damages estimated at $1,467,703.94 was clearly within the policy limits of insurance policy no. UNPK018079.

102. Universal did not send Plaintiffs a Reservation of Rights Letter at any point during the investigation of the claim.

103. By not sending Plaintiffs a Reservation of Rights Letter, Universal led Plaintiffs to believe that they were investigating the claim in good faith and that a reasonable offer to pay out the claims would be made, thus creating a detrimental reliance.

104. Universal's adjuster communicated to Plaintiffs his intention to adjust and recommend to Universal payment of all claims for $1,200,000. He then sent an Adjustment Agreement form to Plaintiffs to be signed by them to be then

considered by Universal for payment of all claims in an amount of approximately $899,000.

105. Plaintiffs were under the impression that their claims would be settled shortly thereafter, following an extensive claim evaluation process.

106. Plaintiffs performed the necessary repairs to their properties under the belief that their claim would be paid by Universal.

107. Instead of delivering on its promise to issue payment, Universal breached its promise and denied coverage and proceeded to close the claims.

108. Universal has incurred in bad faith and unfair claim adjustment practices.

109. Universal has been paid for insurance from Plaintiffs for at least the last 8 years, including for a renewal as recently as February of 2018. Universal has acted in bad faith not only with respect to denying coverage for Plaintiff's hurricane damage, but also in cancelling the Plaintiff's coverage after renewing the policy and being paid for the coverage.

110. Defendant Universal has been obstinate on this matter and has not acted in good faith and therefore, is liable for attorneys' fees, interest and costs, in addition to paying for the damages suffered under the policy.

111. As a result of the foregoing, Plaintiffs have been damaged in at least the sum of $2,000,000.

## THIRD CAUSE OF ACTION – AGAINST UNIVERSAL FOR ESTOPPEL

112. Plaintiffs repeat, reiterate and reallege each and every allegation contained in

the preceding paragraphs as if more fully set forth herein.

113. In Puerto Rico, there is a cause of action for a party to invoke when another party goes against its own acts and causes damage to the former. This doctrine is known as Equitable Estoppel ("*actos propios*").

114. In this case, Universal Insurance Company engaged in conduct that led the Plaintiffs to believe that their claim would be paid, thus creating a detrimental reliance on the part of the Plaintiffs.

115. Universal Insurance Company did not send out a Reservation of Rights Letter at any point during the investigation of Plaintiffs' claim.

116. The absence of a Reservation of Rights Letter gave Plaintiffs the clear understanding that Universal Insurance Company would duly adjust and pay out their claim as a result of the damages suffered on account of Hurricane Maria.

117. Universal Insurance Company utilized an adjuster to work with Plaintiffs to investigate and adjust their claims.

118. Plaintiffs' representatives and the adjuster sustained ongoing conversations and negotiations regarding the amount to be paid out for Plaintiffs' claims.

119. Relying on the absence of a Reservation of Rights Letter and the ongoing negotiations with the adjuster as confirmation that Universal Insurance Company would, in fact, pay out their claims, Plaintiffs proceeded to perform the repairs necessary to bring the properties back to proper working order.

120. The repairs Plaintiffs performed on the properties amounted to a total of $1,467,703.94.

121. Universal Insurance Company extended an offer of $1.2 million to Plaintiffs for their claims.

122. Relying on the offer made by Universal Insurance Company of $1.2 million for their claims, Plaintiffs continued to maintain the properties in order to prevent further related damages from occurring.

123. Plaintiffs, relying on the acts by Universal Insurance Company, incurred in the expense of mitigating and performing the repairs needed to make the properties fit to inhabit once again.

124. After having given the appearance that they would pay Plaintiffs' claims, Universal Insurance Company drastically reduced their offer from $1.2 million to $899,000.00.

125. After having given the appearance they would pay Plaintiffs' claims, despite significantly reducing their offer of $1.2 million to $899,000.00, Universal Insurance Company unilaterally denied coverage to Plaintiffs.

126. Universal Insurance Company's acts and omissions created a scenario of detrimental reliance on the part of Plaintiffs, thus causing damages.

127. Based on their initial acts and omissions, Universal Insurance Company is estopped from denying coverage to Plaintiffs.

128. Plaintiffs have suffered damages as a result of the aforementioned acts and omissions in the amount of no less than $2,000,000.

## FOURTH CAUSE OF ACTION – AGAINST UNIVERSAL FOR UNJUST ENRICHMENT

129. Plaintiffs repeat, reiterate and reallege each and every allegation contained in the preceding paragraphs as if more fully set forth herein.

130. It is known that in Puerto Rico there is a cause of action based on unjust enrichment when a party is enriched by a correlative and connected impoverishment.

131. In this case, the practice of denying coverage and refusing payment of the claim generated profit for Universal. This caused a correlative impoverishment for all insureds that have had to pay their damages from their own money and have ceased to reap the benefits they would have obtained by investing their money on other endeavors.

132. The Plaintiffs had to disburse out of their own pocket the amount of $1,467,703.94 to perform the necessary repairs to their properties.

133. Plaintiffs had to find the money to perform these repairs. This money has a value.

134. During the time that it takes for Universal Insurance Company to reimburse Plaintiffs for this amount, that money's value increases due to interest.

135. The interest rate applicable to this amount of money Plaintiffs had to disburse shall be of this Honorable Court's determination.

136. This displacement is due exclusively to the disloyal practices by Universal. When Universal does not timely pay their insureds' claims, the insureds suffer damages at the hands of disloyal practices.

137. Thus, as a result of the foregoing, Plaintiffs have suffered damages in an amount no less than $2,000,000.00, plus interest as determined by the Court.

**FIFTH CAUSE OF ACTION – AGAINST MR. RAMOS-COLL
FOR NEGLIGENT BROKERAGE**

138. Plaintiffs repeat, reiterate and reallege each and every allegation contained in the preceding paragraphs as if more fully set forth herein.

139. Upon information and belief, at all relevant times hereinafter, Mr. Ramos-Coll was an insurance broker engaged in the business of insurance procurement and renewal, including the type of insurance contained in the subject policy.

140. Prior to September 20, 2017, and for over the past eleven (12) years, Plaintiffs have engaged the services of Mr. Ramos-Coll to advise Plaintiffs as to their insurance needs and to obtain adequate and proper insurance coverage for their properties in Fajardo, Puerto Rico as described above.

141. Mr. Ramos-Coll had a continuing obligation to have all relevant knowledge pertaining to insurance coverage for Plaintiffs, including the use of their premises for seasonal rental at the times relevant herein.

142. Subsequently, Mr. Ramos-Coll procured and then renewed for over at least the past 8 years with Universal, the property and umbrella coverage for the Plaintiffs' properties in Fajardo, Puerto Rico.

143. On or about February 19, 2017 Mr. Ramos-Coll renewed with Universal the insurance policy bearing number UNPK018079, wherein and whereby he did insure the subject premises of the Plaintiffs for the period February 19, 2017 to

February 19, 2018.

144. In the event that there was procurement of inadequate insurance for Plaintiffs, Mr. Ramos-Coll carelessly and negligently failed to procure and provide proper, adequate and sufficient insurance coverage as requested and required by the Plaintiffs in that adequate and sufficient insurance coverage was not provided for the properties located at the subject premises.

145. In the event that there was procurement of inadequate insurance for Plaintiffs, and as a result of Mr. Ramos-Coll's carelessness and negligence, on September 20, 2017, Plaintiffs have sustained damages to their properties at the subject premises in at least $2,000,0000.

146. In the event that there was procurement of inadequate insurance for Plaintiffs, and as a result of Mr. Ramos-Coll's carelessness and negligence in allowing reduced, inadequate, deficient, and insufficient insurance for the Plaintiffs, Plaintiffs have been unable to be fully compensated for the aforementioned damages to their properties on the subject premises.

147. As a result of the foregoing negligence, Plaintiffs have been damaged in at least the sum of $2,000,000.

### SIXTH CAUSE OF ACTION – AGAINST MR. RAMOS-COLL FOR BREACH OF CONTRACT

148. Plaintiffs repeat, reiterate and reallege each and every allegation contained in the preceding paragraphs as if more fully set forth herein.

149. Mr. Ramos-Coll agreed and contracted to obtain adequate and proper insurance

coverage for Plaintiffs' properties on the subject premises.

150. Mr. Ramos-Colll represented to Plaintiffs that the procured insurance policy from Universal was adequate and proper for Plaintiffs' needs at their properties on the subject premises.

151. In the event that there was procurement of inadequate insurance for Plaintiffs, Mr. Ramos-Coll breached the contract between the parties herein.

152. As a result of the foregoing breach, Plaintiffs have been damaged in at least the sum of $2,000,000.

**SEVENTH CAUSE OF ACTION –ABC INSURANCE COMPANIES**

153. Plaintiffs repeat, reiterate and reallege each and every allegation contained in the preceding paragraphs as if more fully set forth herein.

154.        Defendants ABC Insurance Companies were, at the time herein pertinent, authorized to do business as such in Puerto Rico, and upon information and belief issued an insurance policy on behalf of Mr. Ramos-Coll or another tortfeasor.

155.        Pursuant to 26 P.R. Laws Ann. § 2001, an insurance company is directly liable   for the negligence or fault of its insured.

156.        Pursuant to 26 P.R. Laws Ann. § 2003, an action against an insurer may be brought separately or may be joined together with an action against its insured.

157. As a result, Defendants ABC Insurance Companies are liable to Plaintiffs for the damages caused to them by Mr. Ramos-Coll or another tortfeasor.

## TRIAL BY JURY DEMANDED

158. Plaintiffs hereby demand trial by jury.

**WHEREFORE**, Plaintiffs respectfully request this Honorable Court issue Declaratory Judgment in that: 1) Plaintiffs' three (3) properties are duly covered under Universal Insurance Company's Policy Number UNPK018079; 2) that since Universal did not expressly refer to or cite to any exclusion under any part of the policy in their denial letter, they are precluded from denying coverage; and 3) that since all three (3) properties fall under the applicable definitions of "residence premises" and "insured location", Plaintiffs are entitled to all the sub-coverages each property has listed in its respective declarations page. (*See* Exhibit #1 - 2017-2018 Insurance Policy Property Coverage Declarations page main residence and for secondary residences).

Plaintiffs also respectfully request this Honorable Court issue judgment against Defendant Universal Insurance Company on the First Cause of action in at least the sum of $3,107,703.94, on the Second Cause of action on behalf of Plaintiffs against Universal Insurance Company in at least the sum of $2,000,000; on the Third Cause of action on behalf of Plaintiffs against Universal Insurance Company in at least the sum of $2,000,000; on the Fourth Cause of action on behalf of Plaintiffs against Universal Insurance Company in at least the sum of $2,000,000 plus interest as determined by the Court; on the Fifth Cause of action on behalf of Plaintiffs against Mr. Ramon Enrique Ramos-Coll in at least the sum of $2,000,000; on the Sixth Cause of action on behalf of Plaintiffs against Mr. Ramon Enrique Ramos-Coll in at least the sum of $2,000,000, all together with interest from September 20, 2017, plus the costs and disbursements of this action, reasonable attorneys' fees, and such other and further relief as to this Honorable

Court may seem just and proper under the law.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 6th day of September 2019.

**CERTIFICATE OF SERVICE**: We hereby certify that on this same date, the preceding Amended Complaint was filed with the Court's CM/ECF system, which will notify the counselors of record.

*Plaintiff's Counsel:*

**INDIANO & WILLIAMS, P.S.C.**
207 Del Parque Street, Third Floor
San Juan, P.R. 00912
Tel. (787) 641-4545; Fax (787) 641-4544
david.indiano@indianowilliams.com
vanesa.vicens@indianowilliams.com

*s/ David C. Indiano*
**DAVID C. INDIANO**
U.S.D.C. Bar. No. 200601

*s/ Vanesa Vicéns Sánchez*
**VANESA VICÉNS SÁNCHEZ**
U.S.D.C. Bar. No 217807